UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil Action No. 1:13-CR-00141 |
| Plaintiff, | : | (Judge Weber) |
| vs. | : | |
| GLEN GALEMMO, | : | |
| Defendant. | : | |

## LEAD PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS

Lead Plaintiffs John Capannari, John A. Anderson and Kevin Eickmann ("Lead Plaintiffs", or "Petitioners"), on behalf of themselves and the putative Class of innocent Galemmo victims (collectively the "Galemmo Victims") submit this memorandum in opposition to the United States of America's ("US") Motion to Dismiss Petition for Reallocation of Forfeited Funds Pursuant to 21 U.S.C. § 853(n) ("Motion to Dismiss").[1]

## INTRODUCTION

The Galemmo Victims do not oppose the forfeiture of funds. The Galemmo Victims request that those funds, especially the portion of the Rugged Power Funds (defined below) that were initially purchased by Galemmo through PSIF, LLC and located by Counsel for Plaintiffs ("Co-Lead Counsel") and not the US, should be adjudicated and distributed in accordance with a plan of allocation proposed by Co-Lead Counsel and considered by the District Court in Civil Case No. 1:13-cv-0883 (the "Civil Case") as part of the class action. This Court must conclude that the resolution is fair and reasonable to the victims as a whole before it is distributed.

---
[1] The US granted Lead Plaintiffs an extension of time to file this Memorandum in Opposition to December 5, 2014.

The US opposes the involvement of Co-Lead Plaintiffs' and the Galemmo Victims, claiming that under Fed.R.Crim.P. 32.2(c)(1)(A), the Galemmo Victims' Petition for Reallocation of Funds (the "Petition") should be dismissed for lack of standing, failure to state a claim, or lack of authority. The Petition alleges that the Galemmo Victims are not the exact group of victims ("US Victims") identified in the three preliminary forfeiture orders ("Forfeiture Orders") entered by this Court.[2] The Galemmo Victims have alleged in the Petition, the following:

(a) There are Galemmo Victims not identified in the sentencing report[3];

(b) There are Galemmo Victims who are entitled to a larger portion of the fund created for the victims than the amounts set forth in the sentencing report;

(c) There are individuals listed as Galemmo Victims in the sentencing report that were actually net-winners in Mr. Galemmo's Ponzi scheme[4];

(d) There are Galemmo Victims that are entitled to less restitution than the amounts set forth in the sentencing report;

(e) Only four of the bank accounts of the Galemmo Entities were used by the United States to determine the amount of restitution. Co-Lead Counsel believes it is necessary to consider all of the financial information available, including additional bank accounts and financial records pre-dating the bank records; and, therefore, the amounts the United States calculated for payment to the Galemmo Victims is inaccurate; and

---

[2] The three Preliminary Orders were entered by this Court on February 12, 2014 (Docket No. 12), and August 27, 2014 (Docket Nos. 62 & 63).
[3] *See* Docket No. 65. The names of victims and the restitution amounts were read into the record at Mr. Galemmo's sentencing hearing. However, the restitution exhibit was not publicly available on the docket or provided to Plaintiff's counsel until September 22, 2014.
[4] As will be discussed in this memorandum, Glen Galemmo testified in his October 1, 2014 deposition that several of the investors identified in the US and identified on the Restitution Order as victims were actually "net winners".

(f) The Civil Case also provides a forum where all Galemmo Victims, whether as a result of civil or criminal provisions, should receive a fair and reasonable allocation of the forfeited funds.

The Petition alleges that the Galemmo Victims – both the individuals who are named by the US as victims, and some who are not - have an interest in the forfeited property, and request that this Court allocate and distribute the forfeited funds in accordance with their unaccounted-for rights.

Taking Petitioners' allegations as true, the US has failed to establish sufficient cause for this Court to "dismiss" the Galemmo Victims' petition. This Court has both inherent authority and authority derived from the Order interpleading the RPI funds into the Civil Case to enter an order necessary to protect the interests of all Galemmo Victims, including but not limited to those victims not identified by the US. The Galemmo Victims also seek an increase of restitution in the amount of any attorneys fees incurred in aid of the investigation conducted by the US.

### A. THE GALEMMO VICTIMS HAVE STANDING

The Galemmo Victims contest the allocation and distribution of forfeited funds, not the forfeiture itself. The Galemmo Victims have alleged an interest in the forfeited funds that is neither derived from their status as a US victim, nor as a third party.

"The sole purpose of ancillary proceeding is to determine who has the legal right to forfeited property." *See* Mot. to Dism., at 4 (*citing Baranski v. Fifteen Unknown Agents*, 401 F.3d 419, 436-37 (6th Cir. 2005). According to the US, because the Galemmo Victims do not contest the forfeiture, they have conceded standing. *Id*.

The US argues that the Galemmo Victims do not having standing because the either (i) are victims of the criminal activity with interest already protected in the Forfeiture Orders, or (ii) are unsecured third parties to the criminal action. Mot. To Dism., at 4-7. The Galemmo Victims have alleged that there are investors who have a legal right to the forfeited property and that these investors are currently not accounted for. Petition, at 6-8. That is, there are individuals who are victims of Galemmo's frauds – and are not third parties – but are not identified as US Victims in order to protect their interest in the forfeited funds. The method employed by the US in determining each investor's legal interest in the forfeited property is insufficient and inaccurate. Those interests are better protected by the judicial safeguards afforded to the Galemmo Victims in the Civil Case.

Every case cited by the US in its Motion to Dismiss involves a challenge to the forfeiture, itself, and not challenges to the allocation and distribution of forfeited funds. *See generally*, Mot. to Dism. Again, Galemmo Victims do not challenge forfeitability. Therefore, regardless of the Galemmo Victims' status or relationship to the criminal activity, each case cited by the US is inapposite. *Id*.

Likewise, the US cites no case law rejecting allocation challenges from previously-unidentified victims similar to a number of the Galemmo Victims. Mot. to Dism., at 4-7. The US states "[u]nder the law, victims are general, unsecured creditors…", and therefore, lack standing. *Id*. The US cites numerous cases in an effort to buttress this argument; however, the US is unable to cite any reported decisions in its standing argument section dealing with actual victims of the crime, itself. *See, e.g., All*, *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185 (D.C. Cir. 1995) (third party depositors sought a constructive trust of forfeited funds as prior owners, or alternatively, bonafide purchasers); *United States v. White*, 675 F.3d 1073 (8th

Cir. 2012) (ex-wife of criminal defendant opposed forfeitability of husband's funds); *United States v. $20,193.39 in U.S. Currency*, 16 F.3d 344 (9th Cir. 1994) (third party, unsecured creditors challenged forfeitability of loaned monies); *United States v. Tarraf*, 725 F.Supp.2d 625 (E.D. Mich. 2010) (thirty-nine third parties sought return of forfeited funds that were loaned to criminal defendant for costs of pilgrimage); *United States v. Campos*, 859 F.2d 1233 (6th Cir. 1988) (third party creditors challenged the forfeitability of certain property owned by drug store owner).

The US acknowledges that Article III's standing requirement is satisfied when an owner or possessor of property suffers an injury that can be redressed at least in part by the return of the seized property. Mot. to Dism., at 5. *(citing United States v. Contents of Accounts Nos. 3034504504 and 144–07143,* 971 F.2d 974, 985 (3d Cir.1992) (citing *Warth v. Seldin,* 422 U.S. 490, 498–502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Here, the Galemmo Victims have suffered an injury to their property as a result of Galemmo's criminal activity. That injury can be redressed through the recovery of property obtainted from Galemmo and others. Due process requires an accurate allocation of interests and distribution of funds.

The US has failed to satisfy its burden of showing that the petition should dismissed for lack of standing. The Galemmo Victims are not third parties or unsecured creditors. They have alleged a legal interest in the property forfeited that is not currently protected by the Forfeiture Orders, and request that this Court enter an Order allocating and distributing the forfeited funds in a manner sufficient to protect that interest.

> **B.**  **THE GALEMMO VICTIMS HAVE STATED A CLAIM UPON WHICH RELEIF CAN BE GRANTED**

The relief sought by the Galemmo Victims is an allocation and distribution of funds in accordance with the Galemmo Victims' legal interests. The Galemmo Victims have identified

their "…right, title, or interest in the property, the time and circumstances of their acquisition of the right, title, or interest in the property" – a right that the US has acknowledged through its own petitions for forfeiture. In the Petition, the Galemmo Victims allege that their legal interest in the forfeited property is superior to Galemmo's.

The US has given this Court insufficient reason to dismiss the Galemmo Victims' petition for failure to state a claim. The US cites only *United States v. Fabian*[5] in support of its argument. Mot. to Dism., at 8. This case is inapposite to the Galemmo Victims' request. The Court in *Fabian* states that a claimant needs to allege an interest in property that is greater than "…a conclusory legal interest." *Id*. The forfeiture process, itself, is designed to protect the superior interests of victims and implies that the Galemmo Victims' legal interest is not merely "conclusory".

The US focuses on challenges to forfeitability under 21 U.S.C. 853(n)(3), and disregards the primary purpose of the Galemmo Victims' request. The Galemmo Victims have alleged a claim capable of redress through proper allocation and distribution of forfeited funds. Therefore, the Galemmo Victims have properly stated a claim.

C. **THIS COURT HAS THE AUTHORITY TO PROTECT THE GALEMMO VICTIMS' INTEREST IN THE FORFEITED FUNDS**

This Court has inherent authority to protect the Galemmo Victims' interest in all forfeited property; as well as the authority to permit the allocation and distribution of the RPI Funds in the Civil Case by virtue of the Interpleader Order entered by Judge Barrett ("Interpleader Order").[6] The Galemmo Victims are not seeking that this Court re-litigate either the criminal or forfeiture proceedings. The Galemmo Victims are not seeking that this Court enter an Order requiring any

---

[5] *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014).
[6] The Interpleader Order was filed on the docket on May 19, 2014, in the Civil Case, and preceded the Petition for Forfeiture filed by the US with regard to the RPI Funds. *See*, Docket No. 59.

particular type of restitution, or specific allocation or distribution to victims. The Galemmo Victims request only that this Court exercise its authority in ensuring that due process dictates the proper allocation and distribution of funds through the Civil Case.

The Interpleader Order vested in this Court the authority to allocate and distribute the RPI Funds in the Civil Case. Prior to the US becoming aware of the existence of the RPI Funds, the Galemmo Victims had negotiated with RPI and reached the basis for an agreement in principle with respect to the RPI Funds. As a result, RPI and the Galemmo Victims entered into a stipulated Interpleader Order. Pursuant to that Order, the RPI Funds would be allocated and distributed "…based upon the rights of the respective parties to all or any of the funds." RPI Mot. for Interpleader, at 5, *See* Civil Case, Docket No. 46. The Court in the Civil Case, therefore, had original jurisdiction over the allocation and distribution of the RPI Funds: the RPI Funds were to be allocated and distributed, following the Court's review of all evidence submitted and in accordance with each Galemmo Victim's legal interest. The US has provided insufficient reason for this Court to decline exercising its authority to resolve the allocation and distribution of the forfeited funds.

### D. THE RESTITUTION AWARD SHOULD INCLUDE ATTORNEYS FEES INCURRED IN AID OF THE UNITED STATES

The US has failed to provide sufficient grounds to dismiss the Galemmo Victims' request for attorneys fees. The US and IRS admitted that the RPI funds would not have been discovered without the assistance of Co-Lead Counsel. (*See*, Docket No. 27, at 3; Aff. of Elizabeth Shorten, at ¶18, 18, N5). Funds were to be deposited in an escrow account; however, the funds that were held by Galemmo (and his entity, RPI) were demanded by the US before they were deposited in an escrow account established by counsel for RPI and Co-Lead Counsel. The purpose of the US efforts was to ensure that the legal fees were not paid to Co-Lead Counsel as a result of their

efforts to locate and facilitate the deposit of the RPI Funds. These fees are recoverable under the Mandatory Victims Restitution Act, codified at 18 U.S.C. §3663A ("MVRA"). The MVRA states as follows:

> (b) The [restitution] order may require that such defendant…(4) in any case, reimburse the victim for…expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

18 U.S.C. §3663(A)(b)(4).

The Sixth Circuit Court of Appeals has held that the MVRA allows attorney fees to be added to restitution as "other expenses" when incurred by victims in aid of investigation or prosecution, and when such attorney fees or costs were reasonably necessary. *United States v. Elson*, 577 F.3d 713, 726 (6th Cir. 2009) (citing *United States v. Waknine,* 543 F.3d 546 (9th Cir. 2008)).

As stated in the Galemmo Victims' Petition, the attorneys fees arose from the same conduct underlying the criminal offense, i.e. the fraudulent scheme conducted by Galemmo. The criminal investigation into the RPI Funds was initiated immediately after the civil case was filed, setting out the scheme and the funds that were part of it. The US then contacted Plaintiffs' counsel requesting that they share information as a result of this investigation with the US. The fees were foreseeable as the US and its investigators searched for the funds that Co-Lead Counsel had identified - the RPI funds. Again, the US and Agent Shorten both admit that it was *because of the work of Plaintiffs' counsel* that the RPI funds were discovered. (Docket No. 27, at 3; Aff. of Elizabeth Shorten, at ¶18, 18, N5).

The Galemmo Victims' request for its attorneys fee is timely. The Galemmo Victims had no reason to believe that Co-Lead Counsels' efforts in discovering and securing the RPI Funds would be usurped by the US. It was not until the Forfeiture Orders were entered on August 27,

2014, that that the Galemmo Victims (i) realized that the restitution amounts set forth by the US were wrong, and (ii) that the US refused any form of reimbursement for the attorneys fees incurred in finding and delivering the RPI Funds to the US investigators. *See*, Forfeiture Orders, Docket Nos. 62 & 63. The Galemmo Victims' Petition, which included the request for attorneys fees, was filed of record on October 10, 2014. Therefore, the US has provided insufficient support for its argument that the Galemmo Victims' request is not within 60 days of discovery as required by 18 U.S.C. § 3664.

The position of the US discourages private litigants from assisting victims of a Ponzi scheme. The Galemmo Victims retained law firms with unique knowledge and capacity to handle a matter of this extreme complexity. The work undertaken by Co-Lead Counsel in locating the RPI Funds and negotiating the stipulated interpleader was time-intensive, arduous, and complex. But for the work of Co-Lead Counsel, the RPI Funds would not have been found – let alone secured. The US should not be allowed to wait for civil attorneys to incur hundreds of hours to locate funds and property for victims, and then blockade – over the Court's Interpleader Order – the attorneys' recovery for work performed. To expect qualified firms to represent victims for free is impractical. Without qualified representation, victims' recovery will be severely compromised.

The US has given this Court insufficient reason to dismiss its Petition with regard to attorneys fees. Lead Plaintiffs request that the efforts of Co-Lead Counsel in locating the RPI Funds for the US should properly be deemed an expense of investigation under the MVRA.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that all funds forfeited be held in an account designated by the Court for recovery on behalf of all Galemmo Victims, and that the funds and property therein be allocated and distributed to the putative class in manner deemed fair and reasonable by the Court in Case No. 1:13-cv-00883 after discovery is completed and the evidence is submitted to the Court. In the alternative, Lead Plaintiffs request that the attorneys fees of Co-Lead Counsel incurred in connection with work done to assist the US in recovery of the RPI funds be added to this Court's restitution order.

Dated: December 2, 2014                           Respectfully submitted,

s/ James R. Cummins                               /s/ Richard S. Wayne
James R. Cummins (0000861)                        Richard S. Wayne (0022390)
Phyllis E. Brown (0037334)                        Brett M. Renzenbrink (0086723)
CUMMINS & BROWN LLC                               STRAUSS TROY CO., LPA
312 Walnut Street, Suite 1000                     The Federal Reserve Building
Cincinnati, OH 45202                              150 East Fourth Street
(513) 241-6400 – Telephone                        Cincinnati, Ohio 45202-4018
(513) 241-6464 – Facsimile                        (513) 621-2120 – Telephone
E-mail: jcummins@cumminsbrownlaw.com              (513) 629-9426 – Facsimile
E-mail: pbrown@cumminsbrownlaw.com                E-mail: rswayne@strausstroy.com
                                                  E-mail: bmrezenbrink@strausstroy.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court this 2nd day of December, 2014. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. If a party is not given notice electronically through the Court's system a copy will be served by ordinary United States mail, first class postage prepaid, this 2nd day of December, 2014.

      /s/ Richard S. Wayne
      Richard S. Wayne (0022390)

3862896_1.DOC